UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDERICK J. FISCHER, | CASE NO. C13-898 MJP |
| Plaintiff, | ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION |
| v. | |
| DANIEL GRIFFITH et al., | |
| Defendants. | |

THIS MATTER comes before the Court on Defendant Scott Frakes's Objections (Dkt. No. 32) to the Report and Recommendation of Magistrate Judge Tsuchida (Dkt. No. 31) regarding Defendants' Motions for Summary Judgment (Dkt. Nos. 16, 28). Having considered the Objections, the Report and Recommendation, Defendants' Motion for Summary Judgment, Plaintiff Frederick Fischer's Response (Dkt. No. 18), Defendants' Reply (Dkt. No. 21), Defendants' Supplementary Motion for Summary Judgment, Plaintiff's Response (Dkt. No. 29), Defendant's Reply (Dkt. No. 30), and all related papers, the Court hereby ADOPTS the Report and Recommendation with respect to the denial of summary judgment and DECLINES TO ADOPT the Report and Recommendation with respect to leave to amend Plaintiff's Complaint.

**Background**

Because the Objections filed relate solely to the First Amendment retaliation claim on which Judge Tsuchida is recommending denying summary judgment, the background discussed here is limited to facts supporting that claim. In the state of California in 1974, Plaintiff Fischer was sentenced to life in prison for first degree murder. (Dkt. No. 16 at 2.) In 1976, Mr. Fischer was transferred to the Washington Department of Corrections for two reasons about which there is no dispute: proximity to family members and concerns for his safety because he had testified in a mafia trial. (See Dkt. No. 19 at 118; id. at 21–22.)

During his stay in Washington custody, Mr. Fischer litigated a separate claim against Defendant Correctional Officer Griffith in which he alleged that Mr. Griffith was behind a beating Mr. Fischer suffered at the hands of another inmate. See Fischer v. Griffith, No. C10–0106–JCC, 2011 WL 6013548 (W.D. Wash. Dec. 2, 2011). In support of this suit, Mr. Fischer made public records requests regarding Mr. Griffith. (See Dkt. No. 17, Ex. A at 6–9.) He also grieved various examples of subsequent, related conduct by Defendants. (See, e.g., Dkt. No. 17, Ex. C at 15–16.)

In January 2013, Mr. Fischer was transferred from the custody of the Washington Department of Corrections to the California prison system (see Dkt. No. 16 at 2), ostensibly to remedy a man-days imbalance between California and Washington and because Mr. Griffith no longer received visitors in Washington. (See Dkt. No. 28 at 2.) As Judge Tsuchida's Report and Recommendation notes, Plaintiff has submitted evidence that these reasons were pretextual: the rationales given for his transfer shifted over time and prison officials refused to send California other prisoners in Mr. Fischer's place even when it was suggested that they would be more appropriate candidates for transfer. (See Report and Recommendation, Dkt. No 31 at 6–12.)

1  Judge Tsuchida issued a Report and Recommendation in which he recommends denying
2  summary judgment with respect to the First Amendment retaliation claim against Defendant
3  Scott Frakes, Deputy Director of Prisons, granting it in other respects, and granting Plaintiff
4  leave to file an amended complaint in conformity with the Report and Recommendation.

5  Defendant Frakes now objects to the recommendation to deny summary judgment on the
6  First Amendment retaliation claim against him. (Dkt. No. 32 at 1–3.) He also argues that he
7  should be permitted leave to file a second motion for summary judgment in the event that
8  Plaintiff is permitted to file an amended complaint narrowing the claims to First Amendment
9  retaliation. (Dkt. No. 32 at 3.)

**Discussion**

I. Legal Standard

The Court reviews de novo the portions of a Report and Recommendation to which there is an objection. See 28 U.S.C. § 636(b)(1).

Federal Rule 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a factual dispute requiring trial exists, the court must view the record in the light most favorable to the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). All material facts alleged by the nonmoving party are assumed to be true, and all inferences must be drawn in that party's favor. Davis v. Team Elec. Co., 520 F.3d 1080, 1088 (9th Cir. 2008).

A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

     II.     First Amendment Retaliation

Defendant Frakes argues the Report and Recommendation erred by finding a disputed issue of material fact with respect to three elements of a First Amendment retaliation claim. As Judge Tsuchida correctly noted, a First Amendment retaliation claim in the prison context requires the plaintiff to prove: (1) the state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005).

On the first element, Defendant argues that Mr. Fischer does not put forward sufficient evidence that the transfer to California was "intended to be adverse action taken against him." (Dkt. No. 32 at 2.) This argument misapprehends the nature of the first element. Whether an action is considered adverse to a prisoner is analyzed independently from the second retaliation element. An adverse action need not rise to the level of a constitutional violation, see <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (1995), and transfer to another prison can be adverse. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531–32 (9th Cir. 1985); see also <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1122–23 (9th Cir. 2001). Indeed, even a threat to transfer an inmate can be adverse. See <u>Brodheim</u>, 584 F.3d at 1270. Here, Mr. Fischer has submitted evidence that he was originally transferred from California to Washington for his own protection after providing testimony against the mafia. (<u>See</u> Dkt. No. 19 at 118.) Mr. Fischer has successfully pointed to a disputed issue of material fact as to whether the transfer was adverse.

The Court assumes Defendant also means to challenge Judge Tsuchida's recommendation regarding the second "because of" element, which does touch on retaliatory

RECOMMENDATION- 4

1  intent. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). The "because of" element

2  means "the protected conduct was a 'substantial' or 'motivating' factor in the defendants'

3  decision." Id. In order to create a genuine issue of material fact on retaliatory motive, a plaintiff

4  generally has to establish that "'in addition to evidence that the defendant knew of the protected

5  speech, at least (1) evidence of proximity in time between the protected speech and the allegedly

6  retaliatory decision; (2) evidence that the defendant expressed opposition to the speech; or (3)

7  evidence that the defendant's proffered reason for the adverse action was pretextual.'" Corales v.

8  Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (citation and emphasis omitted); see also Pratt v.

9  Rowland, 65 F.3d 802, 808 (9th Cir.1995). Defendant argues that neither Ms. Rohrer nor Mr.

10 Frakes knew that Mr. Fischer feared retribution in California at the time they made their

11 respective decisions to pursue his transfer. (Dkt. No. 32 at 2.) The retaliatory intent element

12 focuses in large part on Mr. Frakes' knowledge of Mr. Fischer's protected speech—numerous

13 grievances and pursuit of federal civil-rights litigation—not whether he had specific knowledge

14 of Mr. Fischer's stated fear of retribution in a California prison. Mr. Fischer's expressed

15 opposition to transfer is more than sufficient. But in any case, Plaintiff has pointed to evidence

16 that Mr. Frakes was made aware of both Mr. Fischer's desire to stay in Washington and the

17 reason Mr. Fischer was originally transferred to Washington prior to the date on which Mr.

18 Fischer was eventually transferred back to California. (See Dkt. No. 19 at 118.) In light of the

19 timing of the events and the evidence discussed in the Report and Recommendation indicating

20 other reasons given for transfer may have been pretextual, summary judgment is not proper

21 based on this element either.

22         Defendant next turns to the third element, "protected conduct." (Dkt. No. 32 at 5.) While

23 conceding that Mr. Fischer's predicate conduct constituted exercise of "protected inmate rights,"

24

1  Mr. Frakes argues, "It is for plaintiff to demonstrate evidence or the existence of an issue of
2  material fact regarding Frakes' motivation to affect such rights. It is true that plaintiff has filed
3  many grievances and has engaged in civil rights litigation but there is insufficient evidence and
4  merely surmise, at most, that what Frakes is alleged to have done was borne out of a desire to
5  punish, curtail, reduce, or even minimize such activity." (Id. at 6.) Again, Defendant is muddying
6  the elements. The Court has already addressed the evidence necessary to show a genuine issue of
7  material fact with respect to the second retaliatory intent factor. Mr. Frakes admits he does not
8  merit summary judgment on the basis that Mr. Fischer's conduct was not protected by the First
9  Amendment.
10      Finally, Defendant argues that "plaintiff has failed to advance any evidence of how
11 returning him to California would chill or silence a person of ordinary firmness from future First
12 Amendment activities." (Dkt. No. 32 at 3.) "Because it would be unjust to allow a defendant to
13 escape liability for a First Amendment violation merely because an unusually determined
14 plaintiff persists in his protected activity, [Mr. Fischer] does not have to demonstrate that his
15 speech was actually inhibited or suppressed." Rhodes, 408 F.3d at 569 (quotation marks and
16 citations omitted). Rather, "an objective standard governs the chilling inquiry." Brodheim, 584
17 F.3d at 1271. Here, the record does not support Defendant's view that a reasonable person would
18 not have been chilled by a transfer to a prison system in which the person feared mafia
19 retribution.
20      The Court denies Defendant's Objections to the Report and Recommendation and adopts
21 the Report and Recommendation on the summary judgment issue.
22      III.   Amended Complaint
23      The Report and Recommendation also invites Plaintiff to file an Amended Complaint in
24 conformity with the recommendation. The Court sees no need for a second amended complaint

1 at this stage. The previous amendment explicitly offered the First Amendment retaliation theory
2 on which summary judgment is being denied. (See Dkt. No. 26 at 5.) Defendants were invited to
3 respond to this cause of action in supplementary briefing (Dkt. No. 24 at 1–2), and they took full
4 advantage of that opportunity. (See Dkt. Nos. 28, 30, 32.)

5     The Court therefore declines to adopt the Report and Recommendation insofar as it
6 invited Plaintiff to file a second amended complaint.

**Conclusion**

8     The Court ADOPTS the Report and Recommendation on summary judgment because
9 there exist disputed issues of material fact regarding Plaintiff's First Amendment retaliation
10 claims against Defendant Frakes and DECLINES TO ADOPT the Report and Recommendation
11 insofar as it invites Plaintiff to file an amended complaint because a second amended complaint
12 is unnecessary.

14     The clerk is ordered to provide copies of this order to all counsel.
15     Dated this 23rd day of March, 2015.

                        Marsha J. Pechman
                        Chief United States District Judge